Okay, we'll let the next case, the Sutton case, get set up. All right, case number 20-50597, United States v. Sutton. May it please the court, Mr. Durbin. Let's suppose I'm a passenger in a car, in a taxi cab, and I have methamphetamine in my pocket. And we drive along for a couple of minutes, and the cab pulls over to the curb and picks up another passenger. The passenger gets in, got a backpack. We drive along for a couple of minutes, and then, for whatever reason, I couldn't make one up for my scenario, but for whatever reason, we get pulled over, everybody gets searched, they find the methamphetamine in my pocket, they find a gun in the backpack from the other guys. Under just that set of facts, am I responsible for that person's gun? I say the answer has to be, based on just those facts, a no. There's just nothing that ties that gun and me to any sort of jointly undertaken criminal activity. And so far as I can tell, that's exactly what we have in Ms. Sutton's case as to the second issue, and that's the 2B1.1B1 firearm enhancement. Jordan Taveras is driving the car. Mr. Sutton is sitting in the front seat. Ms. Sutton. Okay, if we were to take judicial notice of the Davidson criminal case, it appears to me he was only convicted of the felon in possession. I don't see, I mean, on this occasion, obviously he had prior convictions, but on this occasion, was he convicted of any drug-related . . . Not so far as I can tell. I don't, I'm not, you know, I have PACER, so I looked up his case, and so far as I can tell, I don't have access to his PSR or anything like that, but so far as I can tell . . . It's just a situation where maybe he was prosecuted in Case A and Sutton was prosecuted in Case B, but they were both prosecuted for conspiracy to, you know, sell meth or something in the car. He was convicted, he was prosecuted for felon in possession, and she was prosecuted for the drugs . . . Right. . . . separately, and not as conspirators in the drugs. Correct. Right? That's correct. Okay, I just want to be clear on that. Well, I mean . . . But was he indicted . . . I'm sorry. Well, it was a plea, right? So was he indicted for conspiracy or possession of drugs? As far as I can tell, no. He was indicted for felon in possession of a firearm, and that's what he did, as far as I know. I have his indictment that I thought, okay, if we're able to take, I'm going to ask if we should take judicial notice of the Davidson case, but if we will, he was indicted for possession of a Smith & Wesson model blah-blah-blah pistol. So, I mean . . . Well, the probation officer, in response to Ms. Sutton's objection about this enhancement, said, well, although there weren't co-defendants in the same case, he was indicted based on the same offense conduct, and the only same offense conduct that I can see is they rode in the car together for a few minutes, and I can't tell that that constitutes jointly undertaking criminal activity. The probation officer treated this, although she used the phrase jointly undertaking criminal activity, citing to the Montelongo case, she treated this like it was strict liability. You know, this was what the government said in its brief. The firearm was in the vehicle with her when she was found in possession of narcotics. That's it. It's not strict liability. 2D1.1 . . . I just want to be clear. As I understand the facts, she was sitting in the front passenger seat and Davidson was in the back seat . . . Behind the driver. . . . behind the driver, and the gun was found where he was . . . Yes. . . . and the purse with the drugs were found where she was. Correct. That's the way I understand it. And so, it's not as if the gun was sitting out in everybody's vision there in the little driver's seat. That's the way I understand it as well. And 2D1.1 is not an independent freestanding enhancement untethered to relevant conduct if the gun is possessed by somebody other than the defendant. If somebody other than the defendant has the gun, then somehow it has to be relevant conduct for the defendant. This is a quote from a 1990 Fifth Circuit case, 917 F. 2nd, 879. The language of Section 2D1.1 indicates that the court must look at conduct relating to the offense of conviction to determine whether a sentence enhancement . . . Well, I mean, if she had had the gun in her purse . . . That would . . . . . . that would have been enough . . . Yep. . . . without her showing something more like . . . I agree. . . . a hunting trip with guns. I agree. I agree. I agree. So, obviously the difference here is just the fact that the possession is the jointly possessing rather than her being in her little part of the car. That's one difference. It's not the only one, I argue. Let's . . . even if there's some scenario that I didn't see that somehow they were involved in jointly undertaking criminal activity, I don't believe that that's enough anymore without going through the relevant conduct guideline as amended in 2015. And I spent . . . attempted to spend a considerable amount of time going over this in my brief. The Fifth Circuit standard treatment of 2D1.1B1 through the years has been this. Drugs are tools of the trade in the drug organization. Therefore, they're always foreseeable if you're part of that organization. So, once the government proves that somebody had a gun, all of a sudden the burden shifts to the defendant to say or prove, okay, I have to prove now that it's clearly improbable that this gun was associated with a criminal conduct. That's been the standard analysis so far as I can tell. And my argument is that that shouldn't have changed on November 1, 2015 when the relevant conduct guideline was amended. Some courts have . . . it describes itself as a clarifying amendment. Other courts have called it a redefinition. But if they weren't in a conspiracy together, we don't have to decide that. To me, this seems like a very fact-bound case that I'm not sure we have to decide a bunch of complex issues. We don't have to decide, is there anything here that shows that they were in a conspiracy together? Then if they were, you know, on selling drugs, then we'd have to get to your point. Does that change things? Does the government have to show more? Blah, blah, blah. But if there wasn't any of that, if she's just in the taxicab, essentially, with some unknown guy, then I don't know that we'd get there, right? Well, I hope that's how you handle this. Out of an abundance of caution. Well, I have no fear. I'm going to ask them questions. So, I mean, I'm looking at both sides of it. Now, obviously, they're going to say that the PFS debt did show that they were in the drugs together. Tell me how it didn't. How did it not show that? I mean, putting aside the issue of what – because you don't have to indict all the post-conspirators. No, no. So, how do we know he wasn't in the conspiracy? Well, I don't know that we do know that. I just think that's the government's burden of proof. They have to prove that. It's not her job to prove she wasn't in a conspiracy. It's the government's job to prove she was with this guy, if she was. And I don't see any evidence of that. The correct analysis now – and I understand that the court is perhaps not interested in getting to the relevant conduct as it relates to the gun. Well, it's not that I'm not interested. I just don't reach issues we don't need to reach. I don't want to do that. Well – I'm trying to make sure I know what issues we need to reach. Right. Now, the government will say we do need to address that because the government thinks we're – If the government convinces the court that somehow they are part of a jointly undertaken criminal – that they were part of a jointly undertaken criminal activity, then to me, the analysis then goes to – because I couldn't find a Fifth Circuit one. This is 795 Appendix 498. Section 2D1.1b1 provides the base offense level – I'll skip that part. The relevant conduct provisions of the guidelines, defendant one is subject to the enhancement if defendant two's possession was within the scope of defendant one and two's jointly undertaken criminal activity, in furtherance of that criminal activity, and three, reasonably foreseeable. And all through the years, it's been reasonable foreseeability, end of discussion. They've never used that analysis. And unfortunately, in my opinion, I can find 12 cases since November 1, 2015 to the present where the court has analyzed a situation where a defendant is held accountable for somebody else's gun under 2D1.1b1, and every time out of those 12, as far as I can tell, all they look at is foreseeability. They don't look at whether it was in the scope of the agreement. They don't look – whether it's in furtherance or not. And to me, I think that should change because – What evidence – if we end up following those 12 cases or whatever, what evidence was there of reasonable foreseeability? To me, if there's no – again, I'm back to the – I see no connection between the two people. So I can't see how there's any reasonable foreseeability. I'm not saying that these two people didn't know each other. I'm not saying that maybe they weren't involved in a jointly undertaken criminal activity. There's just nothing in the record that shows it. The two in the front seat, the two women, picked up Mr. Davidson at a house that was known for being a source of selling drugs. Correct? Yes. I believe that's right. It's not a taxi cab. No, it's not. No, it's not. And that was probably misleading on my part. I mean, you're right, but I still think that's not enough. If you pick somebody up from a drug house and they get in the car, I think you've got to have more than that. That's my argument. That's my argument. Well, we do have more than that. I mean, she had drugs, and I think there was paraphernalia in the car, right? That was in her purse. In her purse. Well, I'm not arguing that she's not – that there's no evidence of her possessing what was intended to distribute. I'm not arguing that at all. Well, we have a guy they picked up who's riding around with a gun in his backpack as well, coming from a known source of drugs, known drug house. Okay. Well, if that's enough, then you're right. That's it. Let me ask you this, Counsel, and I'll fully disclaim this is curiosity on my part, and I'm waiting for you to tell me it's irrelevant, but she was charged as a co-conspirator with Mr. Myers, her roommate. And when they went to Myers' house and her house, they found drugs, they found a gun, they found a lot of other things. Why is the gun that Mr. Myers had not a basis for the enhancement? I just am curious about that. Well, I didn't want to bring that up. That's why I asked. Because you're right. I mean, you look at that and you go, well, there's more evidence for that one than there is the one that the guy had in his backpack. Okay. My first issue in the brief, which I haven't addressed partly at all here today because I did the best I could in the brief, is that the judge and the probation officer made no attempt to determine how much of that was within her scope of the agreement. She wasn't there when they raided the house. She had been in jail for a day. We don't know how long she lived there. We don't know where anything was in terms of where it was found in relation to where she lived in the house. It was not her house. And to me, that needs to be remanded for that reason alone. I asked this in my head. I had the same question you did. Why can't she be held accountable for that one? Because she lived in the house and she was a co-conspirator. I don't have an answer for that. That's not – all I can say is that's not what the precinct's report relied on, to give her the immunity. They obviously thought there was a problem with it because they would have asserted that if they thought that held. Well, maybe so. Maybe so. Just a couple words. I'm running out of time here on my third issue on the court's refusal to grant a downward variance. Obviously, I'm not an unbiased party here, but Ms. Sutton appears to me to be the poster child for a variance. She was 23 years old at the time she was sentenced. Depending on which part of the precinct's report you read, she either had one criminal history point or zero. Her raw release date is sometime in 2034, at which time she will be 37 years old. She is a meth addict.  She tells me a letter. I'm just telling you what she tells me. I don't know if it's true. She said the gun I got, the two points for is keeping me from doing RDAP and the First Step Act. RDAP is the Drug – Inmate Drug Program and the First Step Act. I just – that's a jury argument, I guess, but it just seems like the court should have – I thought her counsel did a really good job laying all that out in a memorandum. The court just didn't respond to any of it. If there are no further questions, I'll yield back my 28 seconds. All right. Thank you very much. We have the same time for a vote. Richard Durbin. Good morning. Richard Durbin for the United States. To go to your first question, Judge Haynes, on Davidson, he was charged in a drug case with a woman named Jennifer Johnson. There were two cases that went up on appeal. He pled guilty to two distributions of methamphetamine with her. They were about – Was that in the car? It was not – so far as I know, it wasn't related to the car, but it was six days – I have one more question. It was six days and nine days before. Okay. But, I mean, I realize he's – We had him treated, but it could have all been the same conduct, but the prosecutorial decision was he was in possession of a gun on December, I think it was the 12th, when that car was stopped, but he had already made, within the previous week, ten days, two undercover deliveries that involved another woman. But were those – they were not with Ms. Sutton? They were – so far as I know, they weren't with Ms. Sutton. Okay. And this other woman, was she in the conspiracy with Sutton? Well, I don't – I'm not going to tell you that she is because that's not what's in the record. What I will say, though, that informs what the district court probably knew in making the decision about Ms. Sutton is that she wasn't just in a taxicab. She had in her purse, she had distributable quantities of methamphetamine and heroin and a digital scale. And Mr. Davidson – He's not attesting that she possessed drugs. I understand. And was selling them. So that isn't the question. That's what gets you your base, you know, level. It's – the two points comes from Davidson in the back seat with a gun in his backpack. Yes, and you're – Because what I have about that is – What's the connection? Well, if you're going to make a strict liability claim for that, then that's inconsistent with what the rule actually says. And I'm not. That's not our position because I think that there is – I don't know that all of us have always known what's in everyone's suitcase, backpack, and whatever in every car we've ridden in. Now, I don't drive around with drug dealers, no, but that doesn't mean I know what's in everybody's backpack, every place that I've ever been in every car in my entire life. Sure. And I don't – I think that's true of everybody in this room, right? I think that's true. Okay. So then what adds to what was in his backpack? The fact that he's a drug dealer somewhere else, I mean, how does that connect him to her? Well, that's where I was going is the information that was available on the record is that they were – he was – they were picking him up. Those two women, Tavarez and Sutton, were picking him up at a house that law enforcement knew was involved in distributing drugs. That's the first thing. And Task Force Officer Ornelas was not there to look for traffic violations. He was there because he had to have had information to be at that house at that time because there was something that was going to happen. When the car was stopped, very shortly after he got into it, in his backpack, in addition to two more bullets to the gun that was under his feet in the car, he had a digital scale, which is indicative of distribution, and he had a whole bunch of plastic baggies, which are also indicative of distribution. And Ms. Sutton had in her purse the distributable quantities of methamphetamine and heroin as well as a digital scale. But does it still have to show that they're co-conspirators, not that they're each drug dealers, but that they work together? Because you can – there's a lot of drug dealers in, you know, Dallas, Texas. They're not all working together. I agree with that. There's a lot of grocery stores that aren't all the same grocery stores. I wish there was more information in the record because I think there's an informant back there. I think there was information she provided. I think there was more. We don't know what it is. Well, what I'm saying to the court is the information that is there, the question is, is that information sufficient to have supported the district court's finding? I'm saying there's not a dearth, there's not absolute lack of information about them being involved in jointly undertaken activity. Three of them in the car. Counsel, so if they're ride-sharing drug dealers, it's not enough for this enhancement. Doesn't the government have to show that they're co-conspirators, and where's the evidence of that? The co-conspirator evidence is that they were there temporarily at the same time. They were there with circumstances that could be inferred that she was going to distribute to him because they both had scales. She had the distributable quantity. He had the plastic baggies to wrap it in, and he was involved in drug trafficking. She was involved in drug trafficking in Odessa, Texas. The evidence of his conduct was put in her record. All this stuff you told us about six days before and all that, where was that in her record? The evidence about Davidson's involvement was known to the district court. I'm not asking that. I understand it. What's in the record for the district court? What's in the record is what you often describe. There is the information about what's in his backpack. There's the information about what's in her purse. Okay, because the district court just relying on a bunch of stuff that they know from other cases that are not part of this case is not part of the record. I realize district courts have experience and all. That's great, but the lawyer representing Sutton needs to be aware of what the evidence is against Sutton and not have to sit in the courthouse where the judge is presiding for the last year trying to hear about all the other cases, right? I agree, Judge. These were cases that were going on at the same time. There were decisions about how to charge it. The issue before the court on the firearm, is that sufficient to support the district court's application of it? Counsel, speaking of the prosecutorial discretion as to how to charge it, what about my curious question to counsel opposite?  Who was indicted as her co-conspirator, identified as her co-conspirator? I wish I could . . . Pardon me. I wish I could tell you the answer to that. I wish somebody could. I don't know. I don't know that it was so much a conscious decision because . . . I hate to throw this into the game, but Myers' case is also pending. It's set for possible argument at the end of August. Now, I wish I had put these things together. I did Myers, but I picked this one up a couple of weeks ago. I'm sitting there looking at it going, wait a minute, these two maybe ought to be together. That's our shortcoming, but I want you to be aware of it. Myers, the issue is holding him accountable for the gun in the car. That's one of the issues. I don't know why they did it. I realize that life is complicated, but the reality is criminal law puts a burden on the government correctly. Yes. Even if we all know this guy is guilty, if you don't put on the evidence that he's guilty, then we can't affirm a conviction. I agree with that, Judge. You're well aware of that, and that's just core to our criminal law in the United States. That's what we all have to address. I understand. Getting back here, I still have a problem with the fact that anybody in a car is liable for what else is in anybody else's backpack without any connection other than they were all in the car. She wasn't even the driver. I'm suggesting that they weren't simply all in the car. It wasn't a taxi cab. That's a really nice hypothetical, but that's not what this is. This was a drug house known to law enforcement. She wasn't even the driver. She wasn't the one picking him up because she's getting a ride with her friend. To where?  We don't know what would happen after that because then they were pulled over. Well, no, we don't know what would happen after that. But, I mean, those circumstances— They just all go to McDonald's. I mean, we don't know. And so the problem is, again, I understand why it's suspicious, and I wouldn't want to be in that car and all of that, but that isn't enough for proponents of the evidence. If that's where you— If that's all you've got. If that's where you come down, that's what's in the record. That's what's in the record. And all I can do is say that you have to make that decision. If that wasn't enough for Judge Cowles— I understand. I'm digging as hard as I can to understand all the pieces. Trust me, I have dug deep. Should we take judicial notice of the Davidson felony possession conviction, or should we ignore it? I don't know that the conviction matters. I think more important is the— Or the indictment. Because the indictment that I saw that came out of this car was felon in possession. Yes. Nothing about conspiring with Sutton or anybody else in the car on that day. Now, if I can't take judicial notice, I'll throw it out of my head. That's why I'm asking. Well, but there's not a question that he was in possession of the firearm. Conviction or no conviction, he was in the car with a firearm. But the question is co-conspirator. And as I said, if he had been charged with conspiring with Sutton in Case 1 and Sutton was charged with conspiring with him in Case 2, we would wonder why they weren't together. But okay, then you'd say, well, at least there's a little bit more there. But there's none of that. Even what you said, his other prosecutions were not that day in the car. No. They were the day before or the night before or other parts of his life. We've got to wait, yes. Even if we took judicial notice of the entire courthouse in question, I still don't see the connection between the two of them other than that they're both criminals. Well, the connection is that there was a law enforcement officer that was there at the house at that time because I think we can infer he was expecting some criminal activity to occur related to drug trafficking because he's a drug task force officer. He's not a traffic enforcement officer. He wasn't there looking for a traffic violation. So he had reason to believe something was going on there. We have Ms. Sutton who has the drugs in her purse and a scale, and then we have Mr. Davidson who comes out, gets in the backseat of the car, and he's got his digital scale and he's got his plastic baggies. Now, from that, I think you can infer that those people were involved in some drug trafficking. What exactly it was going to be and where it was going to be, where it was going to go, I don't know the answer to that. That's where the record ends. That's where the evidence ends. So from that point, say there's a conspiracy. There's enough evidence to call them co-conspirators. So what happens next? Doesn't the government have to prove that Ms. Sutton, that it was foreseeable to Ms. Sutton that there wouldn't be a gun? Yes, we have to establish foreseeability, and I think that the gun in the RV where she's staying with Mr. Myers that has three magazines that are loaded and there's a block there and there's all the drugs there and there's all the money there that she's been held accountable for, I think that shows it's reasonably foreseeable to her. Maybe for that gun, counsel. Davidson's gun. I'm sorry? Davidson's gun we're talking about in the car. No, I understand, but I think it's reasonably foreseeable that guns are going to be involved because, as this Court has said, guns are tools in the trade. It's no shock that there's a gun that ended up in that car, and she had reason being in that trade to know, or at least it would be foreseeable to her, that there would be a firearm that could be involved in a drug transaction. I think that's what reasonable foreseeability is. I don't think that's changed. I don't think we now have to show, well, she knew that he was going to come into the car with a gun. It's reasonably foreseeable that somebody involved in drug trafficking in Odessa, Texas, will have a gun or there will be one in proximity. She knows that from her own experience with the person she's living with in the RV that she's staying in that has a kilo plus of methamphetamine, a pound of heroin, $21,000 in currency, preloaded magazines. Well, obviously the driver didn't know he had a gun. He's the one who asked the policeman to get her jacket out of the backseat where the gun was, plainly visible. So she didn't presume there was a gun. The driver? Yeah. I can't speak to the driver, but that doesn't establish— We don't have to show that she knew it was there. We have to show that it was reasonably foreseeable that it was going to be there. And the— David's interesting. Yes. Somebody somewhere might have a gun sometime. Somebody involved in the transaction was going to have a gun. Yes, that there would be a gun involved. I mean, that's Montelongo. I mean, Montelongo, I think that was—you were on that panel, Judge Haynes. In Montelongo, the gun was up in a safe in the bedroom where the defendant went to pick up drugs in a car that was parked outside from the co-defendant. And that was reasonably foreseeable. Not only that, it was also temporally close enough, because I think that was the question in Montelongo, was there sufficient spatial-temporal relationship between the distribution of the drugs to Luna, or from Luna to Montelongo, and Luna's possession of the gun up in a safe in his bedroom. And here we have the temporal that's on the floor of the backseat of the guy who just got in the car. The first thing he must have done is take the gun out. They didn't drive very far. I think they made two turns before the officer stopped them for failing to make a signal. But that's the issue. I'm not going to convince you any further whether that's what the evidence— It was Judd's fault. Oh, was it? I'm sorry. I'm sorry. I don't think so. I'm sorry. I apologize. My mistake. Okay. I'm happy to be what you think I am. I think you're both the greatest, and I'm pleased to be here. I'm really pleased to be here. The issue concerning the downward variance that Mr. Pichero talked about, I'm not unsympathetic to the circumstances of Ms. Sutton, but the variance probably would not have helped her as long as the gun was still going to be applied to her. The variance might have gotten her a shorter period of time, but if the gun is the debilitating factor and her ability to participate in those— I mean, she obviously is not going to be able to do all these other things in prison. She wants to get out soon. Right. The downward variance demands are a little bit hard on the trial courts. I understand it. It's a highly discretionary matter for the trial courts. It is, and I think this one's difficult. There's something that went on that's off the record. I don't know why Ms. Sutton did not want on the record her discussion with the court. I suspect it was about the cooperation, and she didn't want that on the record for some reason. I mean, I think the court adequately considered those factors and those circumstances, and that's where the court came in. Do you have any questions? Okay. I'll give you the rest of my time. Thank you. Okay. We will hear Mr. Katira to vote. I don't have it with me. I believe there's at least an Eighth Circuit case that says you can take judicial notice of other court records with regards to your being able to take notice of the judicial— What do you do then if we also take notice of these other six days and nine days and whatever, all the drug deals that Davidson did in apparently some other case besides the one that I was in? Well, court records, I was thinking pleadings. I wasn't thinking pre-sentence investigation reports. Anyway, maybe I shouldn't have said that. I mean, to me— But are you objecting to us taking judicial notice— of the indictment in Mr. Davidson's case? Absolutely not. That's the 7-20-CR-0009 in the Westland District of Texas. The Montelongo case. I believe it would be decided differently today under the new amended version of 1B1.1. Mr. Durbin repeatedly talked about foreseeability, and that's what the Montelongo case did. Montelongo participated, and Montelongo could have reasonably— So if it wasn't Montelongo, weren't they in a conspiracy? They were. That's a little bit of a— It is. That's apples and oranges. That's not us. So even if we follow Montelongo to the T— You don't get there. We come out the same way as it came out. Well, if you believe, and I saw this quote recently, the line between speculation and reasonable inference is often not very clear. If you believe it's a reasonable inference that when he came out of that house that had drug activity and got in a car and she has drugs in her pocket or in her purse, that's enough to make them part of a jointly undertaken criminal activity. If you can do that and make that reasonable inference, I think the sky's the limit. Anybody in that house, whatever, gets in that car, they're automatically part of a jointly undertaken criminal activity. I think that's across the line. I think there's speculation. I don't think there is that line because, I mean, that's the problem. I understand in this case we need to address the facts of this case, but typically drug dealers don't advertise in the Dallas Morning News or whatever about they're selling drugs tomorrow out on the street there, on Main Street or something. So you always are having to make some inferences and so on and so forth. One of the government's gigantic tools is debriefs to get information. We all see cases every day where somebody that some co-defendant or co-conspirator somewhere said something and that's enough to hook them up, but I don't see anything here like that, nothing that ties them together. What is the danger of setting a line where being in a car together makes you liable for everything in that car, if you knew the people in the car, so it wasn't a tax advantage? Well, that's guilt by association it sounds to me. I mean, I think that would be wrong for that reason. And again with the gun, the question is not foreseeability anymore. It's the third question. The first question is, was him having that gun, even if you can assume the fact that him coming out of that house ties them together, was him having that gun within the scope of her agreement? There's nothing to do, there's nothing to establish that, and that's the very first criteria now under the amended 1B.1.3 guidelines. That's all I have. Okay, thank you. We appreciate your service as appointed counsel, and of course, Mr. Durbin, we also appreciate you being here as well. So with that, we will take this case under submission, and you are excused, and we're going to take a five-minute break. Thank you.